1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
9                                AT TACOMA
10
11   WILLIAM C. WHITE on behalf of        CASE NO. C11-5737 RJB
     GLADYS E. WHITE,
12                                         ORDER GRANTING IN PART AND
                        Plaintiff,         DENYING IN PART PLAINTIFF'S
                                           MOTION FOR PARTIAL
13        v.                               SUMMARY JUDGMENT AND
                                           GRANTING IN PART AND
14   ABILITY INSURANCE COMPANY, a          DENYING IN PART DEFENDANT'S
     Nebraska corporation,                 MOTION FOR SUMMARY
15                                         JUDGMENT
                        Defendant.
16

17        This matter comes before the Court on Plaintiff's motion for partial summary judgment

18   (Dkt. 13) and Defendant's cross-motion for summary judgment (Dkt. 30).  The Court has

19   considered the pleadings in support of and in opposition to the motions and the record herein.

20                        **INTRODUCTION AND BACKGROUND**

21        This is an action alleging eight causes of action including Breach of Contract, Insurance

22   Bad Faith, violations of the Insurance Fair Conduct Act (RCW 48.30.015), violations of the

23   Washington Consumer Protection Act (RCW 19.86 *et seq.*), Negligent and Intentional Infliction

24   ORDER GRANTING IN PART AND DENYING IN
     PART PLAINTIFF'S MOTION FOR PARTIAL
     SUMMARY JUDGMENT AND GRANTING IN
     PART AND DENYING IN PART DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT- 1

of Emotional Distress, Constructive Fraud, and Injunctive relief against Ability Insurance Company. Dkt. 1 pp. 7-9.

Gladys White purchased a long-term care insurance policy from Medico Life Insurance Company, a subsidiary of Medico Insurance Company, on August 8, 1999. Dkt. 14 pp. 5-20. In September, 2007 Medico Insurance Company sold its subsidiary, Medico Life, to Ability Resources, Inc. Dkt. 14 pp. 23. Medico Life, no longer affiliated with Medico, changed its name to Ability Insurance Company in 2009. *Id*. Ms. White's policy is administered by Defendant Ability Insurance Company (Ability). *Id*.

On September 16, 2007, Ms. White designated her daughter, Cheryl Silvernail, to receive notice of unintentional lapse or termination of the insurance policy for nonpayment of premium pursuant to WAC 284-54-253. Dkt. 14 pp. 27. Ms. White signed her daughter's name on this form without her daughter's knowledge, included two different area codes for her daughter's listed telephone number, and signed her daughter's name for her in a place indicating she was "elect[ing] NOT to designate any person to receive such notice" - even though earlier on the form Ms. White also named her daughter as the designee. *Id*. Although Ms. Silvernail had multiple prior communications with Ability concerning claims of her mother, Ability did not give a copy of the form to Ms. Silvernail, did not inform her that she had been designated, did not ask Ms. Silvernail to inform Ability of any changes in her address, and did not at any time check to make sure whether Ms. Silvernail's address on the form was valid. Dkt. 15 pp. 1.

In July 2007, Ability was made aware by her primary care physician, Dr. Mihali, that Ms. White would only "progressively decline," and would never be capable of returning to independent living. Dkt. 14 pp. 29. In October 2007, Ability was contacted by Ms. Silvernail

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 2

regarding her mother's need for care. *Id*. pp. 31-33.  In 2008, Ms. White's caregiver began noticing Ms. White's cognitive impairment and other problems. *Id*. pp. 35.

Ms. White's insurance premium, due February 8, 2009, went unpaid.  Dkt. 15 pp. 2.  On March 20, 2009, Ability mailed a letter to Cheryl Silvernail, informing her of her mother's non-payment of the premium.  Dkt. 14 pp. 37.  In the letter, Ability's president, Timothy J. Hall stated:

> You have been named as the Advisor to receive notification of this past due premium for Gladys E. White.
>
> All of our long-term care/home health policyholders are given the opportunity to name an Advisor. The Advisor receives a notice from us any time the policyholder's premium is 30 days past due. Our policyholder trusts you to contact him/her to discuss the importance of paying the policy premium.
>
> If the premium is not received within 35 days from the date of this letter, the policy will lapse for nonpayment of premium.

Dkt. 14 pp. 37.  Ms. Silvernail had moved and did not receive this notice.  Apparently, no additional attempts were made to contact Ms. Silvernail, despite Ability having maintained Ms. Silvernail's home, work, and cellular telephone numbers from past communications.  Dkt. 15 pp. 1-2.

On July 26, 2009, Gladys White fell and broke her wrist.  Dkt. 14 pp. 40. She was hospitalized and then required assisted living at Lynden Grove, a long-term care facility located in Puyallup, Washington.  *Id.*  Within the medical records from Ms. White's fall, doctors noted Ms. White's history of dementia.  *Id.*  On or around August 4, 2009, Ms. Silvernail called Ability to submit a claim for her mother under her policy. Dkt. 14 pp. 39; Dkt 15 pp. 2.  Ms. Silvernail spoke with a representative of Ability and discussed Ms. White's recent injury. Dkt. 15 pp. 2.  The representative located Ms. White's policy number, went over some information regarding

1   the insured's long-term care insurance, and explained to Ms. Silvernail how to obtain a claim

2   form online.  *Id*.  At no time during the conversation was Ms. Silvernail informed that her mother

3   had not paid her last premium or that there was any issue concerning the policy being in full

4   force.  *Id*.  Ms. Silvernail obtained the claim form, completed it, and faxed it to Ability two days

5   later, on August 6, 2009.  Id., Dkt. 14 pp. 39-42.

6       On August 31, 2009, Ability sent a letter to Gladys White at her home address

7   acknowledging her recent correspondence.  Dkt. 14 pp. 44.  The letter further stated that

8   "According to our records, your contract lapsed effective 2-7-2009; therefore, you have no

9   benefits available."  *Id*.  This correspondence did not reach Ms. White, as she had been moved to

10  assisted living facility at Lynden Grove.

11      On September 8, 2009, Ms. Silvernail sent in a second claim. Dkt. 14 pp. 46-52.  This

12  claim reported serious cognitive and other functional problems.  *Id*.

13      On September 9, 2009, Ms Silvernail went to her mother's house to retrieve her mail.

14  Ms. Silvernail discovered the August 31, 2009, letter from Ability indicating Gladys White's

15  policy had lapsed effective February 8, 2009.  Dkt. 15 pp. 2.  Ms. Silvernail sent correspondence

16  to Ability on September 11, 2009, requesting an explanation regarding the lapse of coverage.

17  Dkt. 14 pp. 54.  When contacted by Ability on September 15, 2009, Ms. Silvernail told the

18  Ability representative that the insured was cognitively impaired and requested reinstatement of

19  the policy.  The Ability representative informed Ms. Silvernail that she "could send a letter with

20  documentation and that the dept. that handles the reinstatement would have to review and

21  determine if the contract was eligible for reinstatement."  Dkt. 14 pp. 56.  On September 30,

22  2009, Ms. Silvernail mailed documentation to Ability referencing Gladys White's dementia and

23  cognitive problems.  Dkt. 14 pp. 59-74.

24

On November 5, 2009, the Senior Vice President of Ability, Donald Lawler, sent a letter of response to Ms. Silvernail indicating the insurer's reasons for terminating benefits:

> Please be advised that the above contract lapsed for non-payment of premium on February 7, 2009. Notice was given to Ms. White on three occasions at the address on file. Additionally, a Third Party Advisor Notice was sent to you at the Eatonville, Washington address we had on file. This address was given to us on September 10, 2007 by Ms. White.

> The policy has a Restoration of Benefits provision in Part M on page 9, but the provision is limited to a five-month period in which to request reinstatement. The five-month period expired in July and we did not receive any contact from you until August.

> I am sorry I could not write more favorably. If you have any questions or need additional information, please contact my office.

Dkt. 14 pp. 76.

On November 30, 2009, Ms. Silvernail again wrote Ability seeking reconsideration of its decision to terminate benefits. In this correspondence, Ms. Silvernail further explained her mother's dementia and indicated that she had never received notice of the nonpayment. Dkt. 14 pp. 78.

Donald Lawler again responded for Ability, restating its position that the five-month reinstatement period had expired prior to the request for restoration. Dkt. 14 pp. 80.

Ms Silvernail's attempt to tender the past due premium was rejected and a check made payable to Medico Insurance Company was returned. Dkt. 145 pp. 82.

On August 9, 2010, Jack White, Gladys White's son, contacted the State of Washington Office of the Insurance Commissioner (OIC) regarding Ability's denial of coverage. Dkt. 14 pp. 85-87. OIC contacted Ability on August 12, 2010, requesting information about the denial. *Id*. Mr. Lawler responded by letter, with an attached specimen copy of the pertinent policy, again

stating that the policy lapsed for non-payment of premium on February 7, 2009. Dkt. 14 pp. 89-102. The OIC posed additional questions regarding the events leading to termination of benefits and Ability's compliance with WAC 284-54-253, regarding the naming of designees and notice thereto of missed premium payments. Dkt. 14 pp. 104-05. Mr. Lawler again responded, asserting that Ability was in compliance with WAC 284-54-253. Dkt. 14 pp. 107-09.

The OIC disagreed with Ability's analysis and in a September 24, 2010, response letter the OIC stated as follows:

> Thank you for your recent response to our office regarding Mrs. White's 1ong-term care policy. In the response, you explained that Ability mailed the reinstatement notice and the third-party advisor notice to Cheri Silvernail on March 20, 2009.
>
> Under WAC 284-54-253(1)(a), the designee's notice must "provide that the contract or certificate will not lapse until at least thirty days after the notice is mailed to the insured's designee." Thus, the contract could not lapse until April 19, 2009, at the earliest. Moreover, WAC 284-54-253(2) requires, in the event of lapse for nonpayment of premium where the insurer is provided with proof of the insured's cognitive impairment, that the insurer allow reinstatement when reinstatement is requested within the five months after the lapse. Therefore, the insured in this case had until September 19, 2009 to request reinstatement. Because Ms. Silvernail spoke with Ability on September 15, 2009, asking to reinstate the policy, Ability was obligated under Washington law to comply and reinstate the policy. Of course, Ability is entitled to any premiums to which is it entitled under the contract that it has not yet received for the period.

Dkt. 14 pp. 111-12.

Ability disagreed with the OIC's interpretation of WAC 284-54-253(1) and on October 4, 2010, Donald Lawler notified OIC as much:

> Please be advised that WAC 264-54-253 (1)(a) extends the grace period and prevents the policy from lapsing during said grace period, but if [the] premium is not received in this extended grace period, the policy termination date reverts back to the paid to date. In this case, the policy lapsed for non-payment of premium on February 7, 2009. The extended grace period does not affect the termination or lapse date.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 6

Dkt. 14 pp. 114.

On October 21, 2010, the OIC again sent correspondence to Ability detailing its position

that Ms. Silvernail[1] was entitled to reinstatement of the policy:

> Specifically, on September 15, 2009 during a phone conversation with
> an Ability representative named Sharon, Ms, Silvernale explained that she
> hadn't known about the lapse and that she wanted to reinstate the policy.
> This phone conversation occurred several days before the end of the grace
> period, which was September 19, 2009.
>
> The Ability representative didn't tell Ms. Silvernale that there was a way
> to reinstate the policy, much less inform her that Ability would require her
> to bring the payments up to date by September 19, 2009, (the end of the grace
> period) to reinstate the policy.
>
> Ability was not acting in good faith under WAC 284-54-800(2) when,
> despite Ms. Si1vernale's specific request to reinstate the policy, Ability
> failed to inform her that she had a right to reinstate the policy, and that
> Ability required her to take certain steps before the end of the grace
> period in order to reinstate the policy.
>
> Because of Ability's failure to act in good faith regarding this policy,
> Ms. Silvernale deserves an opportunity now to reinstate the policy.
>
> P1ease send a reinstatement application to Ms Silvernale along with
> a bill for the reinstatement premium.

Dkt. 14 pp. 116-118

On November 1, 2010, Ability wrote to the OIC restating its position that the policy

lapsed due to non-payment on February 7, 2009, and the five-month grace period terminated on

July 7, 2009, a date prior to Ms. Silvernail's request for reinstatement.  Ability also asserted for

the first time that Ms. Silvernail had not timely or adequately given proof of Gladys White's

cognitive impairment or loss of functional capacity.  Dkt. 14 pp. 120-21.

---

[1] This and subsequent correspondence misspells Ms. Silvernail as Ms. Silvernale.

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND GRANTING IN
PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 7

1    As a result of the OIC determination of violations of WAC 284-54-253, on April 27,

2   2011, the OIC issued an Order suspending the Certificate of Authority issued to Ability for a

3   period of six months, effective ten days from the entry of the Order.  Dkt. 14 pp 137-38.  This

4   Order of suspension was confined to the authority of Ability to write new business during the

5   period of suspension.  *Id.*

6    On the same date, April 27, 2011, the OIC issued an Order to Cease and Desist.  Dkt. 14

7   pp. 134-35.  The Order detailed the conduct of Ability and ordered that Ability "immediately

8   cease and desist from further violating the Code [RCW 48.02.080 of the Washington Insurance

9   Code] by not allowing reinstatement of their long term care policies within five (5) months after

10   the lapse date set forth in the WAC 284-54-253(1) notice when the insured provides proof of

11   their cognitive impairment or loss of functional capacity."  *Id.*

12    Ability requested a hearing before an administrative law judge to challenge the findings

13   and directions of the Orders, asserting that it is not required to provide reinstatement in the

14   factual situation presented in this matter.  Dkt. 14 pp. 131-32.  Ability's subsequent motion for a

15   stay of the Order to Cease and Desist was denied.  Dkt. 14 pp. 141-43.  The Order Suspending

16   Certificate of Authority was automatically stayed pursuant to RCW 48.04.020.  Dkt. 14 pp. 145-

17   47.  The hearing challenging the OIC's Order to Cease and Desist and the OIC's Order

18   Suspending Certificate of Authority was held on August 3-4, 2011, and the outcome is pending.

19   *Id.*

20    The instant lawsuit was filed on September 15, 2011.  Dkt. 1.  Plaintiff's Complaint

21   asserts that Defendant Ability (1) breached its contract with Ms. White, (2) acted in bad faith, (3)

22   violated the Insurance Fair Conduct Act, and (4) violated the Consumer Protection Act.  *Id.*

23

24   ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND GRANTING IN
PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 8

Ability denies the allegations, asserting it complied with state law and its obligations under the insurance contract with Plaintiff.  Dkt. 7.

The parties have filed cross-motions for summary judgment.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp*., 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.  *Idema v. Dreamworks, Inc*., 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact that might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue,

1  summary judgment is not appropriate.  *See v. Durang,* 711 F.2d 141, 143 (9th Cir. 1983).  A

2  dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

3  jury could return a verdict for the nonmoving party."  *Anderson,* at 248.  The mere existence of a

4  scintilla of evidence in support of the party's position is insufficient to establish a genuine

5  dispute; there must be evidence on which a jury could reasonably find for the party.  *Id.,* at 252.

6      The issues presented are governed by Washington State law.  See *Insurance Co. N.*

7  *Am. v. Federal Express Corp.,* 189 F.3d 914, 919 (9th Cir. 1999).  Washington State law is clear

8  that the interpretation of policy language contained in an insurance contract is a question of law.

9  *Butzberger v. Foster,* 151 Wn.2d 396, 401 (2004); *State Farm General Ins. Co. v. Emerson,* 102

10  Wn.2d 477, 480 (1984).  Where there are no material facts in dispute, interpretation of the

11  insuring language at issue is appropriately decided on summary judgment.  See *American*

12  *Bankers Ins. v. N.W. Nat. Ins.,* 198 F.3d 1332 (11th Cir. 1999).

13                    **BREACH OF INSURANCE CONTRACT**

14      The applicable provisions of Gladys White's insurance policy provides as follows:

15      **PART E.      DEFINITIONS**

16            **...**

17            **Cognitive Impairment:** Deterioration of or loss in your intellectual
            capacity due to organic brain disease or disorder, which requires
18            supervision to protect yourself or others, as measured by clinical evidence
            and standardized tests that measure your impairment in the following areas:
19                  (a)  Your short or long-term memory;

20                  (b)  Your orientation as to person (such as who you are), place
                        (such as where you are) and time (such as day, date, and year);
21
                  (c)  Your deductive or abstract reasoning.
22
            Such loss in intellectual capacity can result from Alzheimer's Disease or
23            related degenerative or dementing illnesses.

24  ORDER GRANTING IN PART AND DENYING IN
    PART PLAINTIFF'S MOTION FOR PARTIAL
    SUMMARY JUDGMENT AND GRANTING IN
    PART AND DENYING IN PART DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT- 10

Dkt. 14 pp. 7.

**PART M.**        **RESTORATION OF BENEFITS IN THE EVENT OF POLICY LAPSE DUE TO COGNITIVE INPAIRMENT OR LOSS OF FUNCTIONAL CAPACITY**

If coverage under this policy ends due to nonpayment of premium, you or any person acting on your behalf will have 5 months to request reinstatement of the policy on the grounds that you suffered from Cognitive Impairment or loss of functional capacity at the time of lapse. We will require the same evidence of Cognitive Impairment or loss of functional capacity that is required for eligibility of benefits under this policy. We also must receive the back premium from the date of default. If these conditions are met, we will reinstate the policy without evidence of insurability. The coverage will be at the same level that existed prior to the date of the lapse. The provision does not apply to a policy that terminated because you requested cancellation or because we paid the maximum dollar amount.

...

**PART S.**        **POLICY PROVISIONS.**

...

(3)    **Grace Period:** Your premium must be paid on or before the date it is due or during the 31-day grace period that follows. Your policy stays in force during your grace period.

(4)    **Reinstatement**: Your policy will lapse if you do not pay your premium before the end of the grace period. If we later accept a premium and do not require an application for reinstatement, that payment will put the policy back in force ...

...

(13)   **Conformity With State Statutes**: The provisions of the policy must conform with the laws of the state in which you reside on the Policy Date. If any do not, this clause amends them so that they do conform.

Dkt. 14 pp. 15-16.

The provisions of Ms. White's policy must conform to the Long-Term Care Insurance Act and the regulations duly promulgated under this Act, Washington Administrative Code (WAC) 284-54 *et. seq*. See RCW 48.84.010, .030.

Initially, every long-care insurance contract must contain a grace period of no fewer than thirty-one days following the due date for the payment of premiums. WAC 284-54-250. Ms. White's policy provides that the premium must be paid on or before the date it is due or during the 31-day grace period that follows. The policy further provides that it remains in force during the grace period and that it will lapse if payment of the premium is not made before the end of the grace period. The policy is consistent with WAC 284-54-250 in that it provides the policy of insurance will not lapse if the insured pays the premium within thirty-one days following the due date.

Ms. White failed to pay her premium on the due date of February 8, 2009. Pursuant to her policy and WAC 284-54-250, she had thirty-one days from the due date to pay the premium to avoid a lapse or termination of coverage. Ms. White did not make a payment prior to expiration of the thirty-one days. Thus, ordinarily the policy would lapse on March 10, 2009.

The regulations, however, provide protections for an unintentional lapse of coverage. The "Unintentional lapse" provisions of WAC 284-54-253 read as follows:

> The purpose of this section is to protect insureds from unintentional lapse by establishing standards for notification of a designee to **receive notice of lapse for nonpayment of premiums at least thirty days prior to the termination of coverage and to provide for a limited right to reinstatement of coverage unintentionally lapsed by a person with a cognitive impairment or loss of functional capacity**. These are minimum standards and do not prevent an insurer from including benefits more favorable to the insured. This section applies to every insurer providing long-term care coverage to a resident of this state, which coverage is issued for delivery or renewed on or after January 1, 1996.

(1) Every insurer shall permit an insured to **designate at least one additional person to receive notice of lapse or termination for nonpayment of premium, if the premium is not paid on or before its due date.** The designation shall include the designee's full name and home address.

    (a) **The notice shall provide that the contract or certificate will not lapse until at least thirty days after the notice is mailed to the insured's designee.**

    ....

(2) Every insurer shall provide a **limited right to reinstate coverage in the event of lapse** or termination for nonpayment of premium, if the insurer is provided proof of the insured's cognitive impairment or loss of functional capacity and **reinstatement is requested within the five months after the policy lapsed or terminated due to nonpayment of premium.**

WAC 284-54-253 (Emphasis added)

The above regulation requires insurers to allow their long-term care insureds the opportunity to periodically designate at least one additional person to received notice if the premium is not paid on or before its due date. Although Ms. White's policy contains no such provision, Ability has acknowledged that pursuant to WAC 284-54-253 Ms. Silvernail was named as a designee to receive notice of a lapse for nonpayment of premiums. See Dkt. 26 pp. 3.

The regulation further provides that the notice to the designee "shall provide that the contract … will not lapse until at least thirty days after the notice is mailed to the insured's designee." WAC 284-54-253(1)(a). Again, the Ability insurance policy contains no such provision. Ability did mail notice to the third-party designee, Ms. Silvernail, at the address provided by Ms. White on her designation form. Dkt. 14 pp. 37. This notice was mailed on March 20, 2009, and provided that "[i]f the premium is not received within 35 days from the date of this letter, the policy will lapse for nonpayment of premium." Dkt. 14 pp. 37.

In accordance with this notice, and the minimum standards of WAC 284-54-253(1)(a), Ms Silvernail had until April 24, 2009, to pay Ms. White's overdue premium to avoid a lapse or termination of coverage. Ms. Silvernail had moved her residence and did not receive the notice and the premiums were not paid. Accordingly, under the terms of the notice, and WAC 284-54-253(1)(a), the policy lapsed on April 24, 2009.

The regulations further provide for a right of reinstatement of an unintentional lapse of a long-term care policy. WAC 284-54-253(2) provides an "insurer shall provide a limited right to reinstate coverage in the event of lapse or termination for nonpayment of premium, if the insurer is provided proof of the insured's cognitive impairment or loss of functional capacity and reinstatement is requested within the five months after the policy lapsed or terminated due to nonpayment of premium."

Ms. White's policy contains a reinstatement provision which provides in pertinent part: "If coverage under this policy ends due to nonpayment of premium, you or any person acting on your behalf will have 5 months to request reinstatement of the policy on the grounds that you suffered from Cognitive Impairment or loss of functional capacity at the time of lapse." Dkt. 14 pp. 15. This provision must be read in conformity to WAC 284-54-253(2).

Ability asserts that the five-month reinstatement period commences to run on the date Ms. White's missed premium payment was due, February 8, 2009, and Ms. Silvernail did not contact Ability until after the reinstatement period terminated. Ability argues that the grace periods provided to the insured and the third-party designee, Ms. Silvernail, run concurrently with the five-month reinstatement period. This argument requires an interpretation of WAC 284-54-253 and the insurance policy to provide that a lapse or termination of coverage occurs on the date payment is due, not at the termination of the applicable grace period.

1    Ability's argument is contrary to the plain language of the governing regulations and the

2    terms of the policy. WAC 284-54-253(2) provides that "the contract [policy of insurance] will

3    not lapse until at least thirty days after the notice is mailed to the insured's designee." The notice

4    to the designee provided by Ability provides that "[i]f the premium is not received within 35

5    days from the date of this letter, the policy will lapse for nonpayment of premium." Dkt. 14 pp.

6    37.

7    The plain language provides that a "lapse" or "termination" does not occur until the end

8    of the grace period, April 24, 2009. There is nothing in the regulations, or the policy of

9    insurance that provides that a lapse or termination occurs on the date the payment was due.

10   There is no basis for interpreting the regulations, or the policy, to provide that the date of

11   termination of benefits is a date other than the date the policy lapses. Nor is there a basis for

12   interpreting the date of lapse as reverting back to the date the payment was due. See *Bushnell v.*

13   *Medico Insurance Co*., 159 Wn.App. 874, 888 (2011)(long-term care coverage dos not lapse

14   until after the grace period).

15   The regulations provide that reinstatement must be requested within the five months after

16   the policy lapsed or terminated due to nonpayment of premium. The lapse or termination

17   occurred on April 24, 2009, when the designee Ms. Silvernail failed to make the premium

18   payment. The five-month period for reinstatement of coverage terminated on September 24,

19   2009.

20   This reading of the regulations is in accord with that of the OIC. The Court gives

21   deference to the agency interpretation of its own regulations. *McCurry v. Chevy Chase Bank,*

22   *FSB*, 169 Wn2d 96, 112 (2010); *ZDI Gaming, Inc. v. State ex rel. Washington State Gambling*

23   *Com'n*, 151 Wn.App. 788, 806 (2009). Even were the regulations considered to be ambiguous,

24   ORDER GRANTING IN PART AND DENYING IN
     PART PLAINTIFF'S MOTION FOR PARTIAL
     SUMMARY JUDGMENT AND GRANTING IN
     PART AND DENYING IN PART DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT- 15

the OIC's interpretation is entitled to substantial weight.  See *Brinnon Group v. Jefferson County*, 159 Wn.App. 446, 483 (2011); *Pub. Util. Dist. No. 1 of Pend Oreille Cnty. v. Dep't of Ecology*, 146 Wn.2d 778, 790 (2002).

Ms. Silvernail contacted Ability on August 4, 2009, to submit a claim for Gladys White. An Ability representative had a discussion with Ms. Silvernail regarding the claim and the policy provisions and explained to Ms. Silvernail how to obtain a claim form online.  At no time during this conversation was Ms. Silvernail informed that her mother had not paid her last premium or that there was any issue concerning the policy being in full force.  It was only on August 31, 2009, that Ms. Silvernail learned that Ability had terminated Gladys White's coverage as of February 8, 2009.  Ms. Silvernail sent correspondence to Ability on September 11, 2009, requesting an explanation regarding the lapse of coverage.  Ability responded on September 15, 2009, and during this conversation Ms. Silvernail requested reinstatement of the policy.  She was informed that she could send "documentation" and that the matter would be reviewed.  On November 5, 2009, Ability denied reinstatement on the sole basis that Ms. Silvernail's request was untimely.  This position was restated numerous times in subsequent correspondence addressed to Ms. Silvernail and the OIC.  It was not until nearly a year later on November 1, 2010, that Ability supported its denial of reinstatement with the additional assertion that Ms. Silvernail had failed to provide timely or adequate proof of Gladys White's cognitive impairment or loss of functional capacity to warrant reinstatement.

Based on the foregoing, Ms. White is entitled to reinstatement of her long-term care policy pursuant to WAC 284-54-253.  Ability had the obligation to act in good faith in its communications with Gladys White's designee and failed to do so.  Ability cannot wait until the reinstatement period has terminated before asserting that Ms. Silvernail failed to provide

1  adequate documentation of cognitive impairment or loss of functional capacity.  See WAC 284-

2  30-360; 284-30-330(13).

3

4                                           **BAD FAITH**

5          Insurers have a duty of good faith to their policyholders; violations of that duty may give

6  rise to tort actions for bad faith.  *Smith v. Safeco Ins. Co*., 150 Wn.2d 478, 484  (2003).  Whether

7  an insurer acted in bad faith is a question of fact.  However, questions of fact may be determined

8  as a matter of law if reasonable minds could reach but one conclusion. *Id*. at 485.

9          The tort of bad faith has been defined as a breach of the obligation to deal fairly with an

10  insured, giving equal consideration to the insured's interests. *Rizzuti v. Basin Travel Service of*

11  *Othello, Inc*., 125 Wn.App. 602,  615 (2005); *Anderson v. State Farm Mut. Ins. Co*., 101

12  Wn.App. 323, 329 (2000). The duty to act in good faith is broad and may be breached by

13  conduct short of intentional bad faith or fraud, although not by a good faith mistake. *Rizzuti*, at

14  615;  *Anderson*, at 329.

15          RCW 48.30.010(1) prohibits any person engaged in insurance from using unfair or

16  deceptive acts in the conduct of such business. The statute authorizes the Insurance

17  Commissioner to promulgate regulations that define minimum standards for insurance business

18  practices. RCW 48.30.010(2). WACs 284–30–300 through –800 provide these standards and

19  further provide that a violation of the standards constitutes a breach of the insurer's duty of good

20  faith. *Rizzuti*, at 615-16; *Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn.App. 686, 697 (2001).

21          WAC 284–30–330 defines specific unfair claims settlement practices.  WAC 284-30-

22  330(13) provides that failing to promptly provide a reasonable explanation of the basis in the

23  insurance policy in relation to the facts or applicable law for denial of coverage is an unfair

24  ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND GRANTING IN
PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 17

1  practice. WAC 284-30-360(4) provides that [u]pon receiving notification of a claim, every

2  insurer must promptly provide necessary claim forms, instructions, and reasonable assistance so

3  that first party claimants can comply with the policy conditions and the insurer's reasonable

4  requirements." Ability's failure to inform and or assist the designee in the reinstatement process

5  is a clear violation of WAC 284-30-330 and constitutes bad faith.

## WASHINGTON CONSUMER PROTECTION ACT

7      The Consumer Protection Act (CPA) provides that unfair or deceptive acts in the conduct

8  of trade or commerce are unlawful. RCW 19.86.020. To prevail on a CPA claim, the claimant

9  must provide evidence of (1) an unfair or deceptive act or practice in trade or commerce that

10  impacts public interest, and (2) resulting injury to the claimant's business or property. *James E.*

11  *Torina Fine Homes, Inc. v. Mut. of Enumclaw Ins. Co*., 118 Wn.App. 12, 20 (2003). Any act

12  that qualifies as an unfair claims settlement practice in WAC 284-30-330 constitutes a per se

13  unfair trade practice impacting public interest. *Id*. at 20-21; *Leingang v. Pierce County Med.*

14  *Bureau, Inc*., 131 Wn.2d 133, 151 (1997). The question of whether an act or practice is

15  actionable under the Consumer Protection Act is a question of law. *Leingang*, at 150;

16  *Dombrosky v. Farmers Ins. Co. of Wash*., 84 Wn.App. 245, 260 (1996).

17      In the insurance context, the elements of a CPA claim and the tort of bad faith are similar.

18  *American Manufacturers Mut. Ins. Co. v. Osborn*, 104 Wn.App. 686, 697, 17 P.3d 1229 (2001).

19  Any act that qualifies as an unfair insurance claims settlement practice in the pertinent

20  regulations constitutes a per se unfair trade practice impacting public interest under the

21  Consumer Protection Act (CPA). RCW 19.86.020; WAC 284-30-330; *Rizzuti v. Basin Travel*

22  *Service of Othello, Inc*., 125 Wn.App. 602, 621, 105 P.3d 1012 (2005); *James E. Torina Fine*

23  *Homes, Inc. v. Mut. of Enumclaw Ins. Co*., 118 Wn.App. 12, 20-21, 74 P.3d 648 (2003).

24

As previously detailed, Ability acted in bad faith in the handling of the request for reinstatement of Gladys White's insurance coverage. Ability's conduct violated Washington's Consumer Protection Act.

## WASHINGTON INSURANCE FAIR CONDUCT ACT

RCW 48.30.015 provides in pertinent part:

> (1) Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs, as set forth in subsection (3) of this section.
>
> (2) The superior court may, after finding that an insurer has acted unreasonably in denying a claim for coverage or payment of benefits or has violated a rule in subsection (5) of this section, increase the total award of damages to an amount not to exceed three times the actual damages.
>
> (3) The superior court shall, after a finding of unreasonable denial of a claim for coverage or payment of benefits, or after a finding of a violation of a rule in subsection (5) of this section, award reasonable attorneys' fees and actual and statutory litigation costs, including expert witness fees, to the first party claimant of an insurance contract who is the prevailing party in such an action.
>
> (4) "First party claimant" means an individual, corporation, association, partnership, or other legal entity asserting a right to payment as a covered person under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such a policy or contract.
> (5) A violation of any of the following is a violation for the purposes of subsections (2) and (3) of this section:
>
>> (a) WAC 284-30-330, captioned "specific unfair claims settlement practices defined";
>>
>> (b) WAC 284-30-350, captioned "misrepresentation of policy provisions";
>>
>> ( c) WAC 284-30-360, captioned "failure to acknowledge pertinent communications";

(d) WAC 284-30-370, captioned "standards for prompt investigation of claims";

(e) WAC 284-30-380, captioned "standards for prompt, fair and equitable settlements applicable to all insurers"; or

(f) An unfair claims settlement practice rule adopted under RCW 48.30.010 by the insurance commissioner intending to implement this section. The rule must be codified in chapter 284-30 of the Washington Administrative Code.

As previously detailed, Ability's denial of the right of reinstatement was unreasonable. Ability violated 48.30.015.

**NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

To prevail on a claim for the tort of intentional infliction of emotional distress, also known as outrage, plaintiff must prove that (1) defendant engaged in extreme and outrageous conduct, (2) he intentionally or recklessly inflicted emotional distress on plaintiff, and (3) it actually resulted in severe emotional distress to plaintiff. *Strong v. Terrell*, 147 Wn.App. 376, 385 (2008). Any claim of outrage must be predicated on behavior so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Kloepfel v. Bokor*, 149 Wn.2d 192, 196 (2003). Plaintiff has failed to establish severe emotional distress resulted as a result of Ability's conduct. The outrage claim is subject to dismissal.

Here, the record does not support Plaintiff's' assertion that Ability's conduct exceeded all possible bounds of decency measured against an objective standard of reasonableness. *Dicomes v. State*, 113 Wn.2d 612, 630 (1989). Moreover, viewing the evidence in the light most favorable to Plaintiff, no reasonable person could conclude that Ability's conduct was " so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

1  decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

2  *Robel v. Roundup Corp.,* 148 Wn.2d 35, 51 (2002).

3      A plaintiff can recover for negligent infliction of emotional distress if he proves: (1)

4  negligence, i.e., duty, breach, proximate cause, and injury; and (2) the additional requirement of

5  objective symptomatology. *Kloepfel v. Bokor,* 149 Wn.2d 192, 199 (2003); *Snyder v. Med. Serv.*

6  *Corp.*, 145 Wn.2d 233, 243–46 (2001). Plaintiff has failed to support the element of objective

7  syptomatology; i.e. objective symptoms of emotional and mental suffering. The negligent

8  infliction of emotional distress claim is subject to dismissal.

9                              **CONSTRUCTIVE FRAUD**

10     The necessary elements to prove constructive fraud include: (1) a representation of an

11  existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity; (5) his

12  intent that it shall be acted on by the person to whom it is made; (6) ignorance of its falsity on the

13  part of the person to whom the representation is addressed; (7) the latter's reliance on the truth of

14  the representation; (8) his right to rely on it; and (9) his consequent damage. *Williams v. Joslin,*

15  65 Wn.2d 696, 697 (1965). In addition, where a party has a duty to disclose a fact, the

16  suppression of that fact is tantamount to an affirmative misrepresentation. *Crisman v. Crisman*,

17  85 Wn.App. 15, 22 (1997); *Washington Mut. Sav. Bank v. Hedreen*, 125 Wn.2d 521, 526 (1994).

18  Silence or concealment in violation of the duty to disclose with the intent to deceive will amount

19  to fraud. See *Dussault v. Am. Int'l Group, Inc.*, 123 Wn.App. 863, 872 (2004). *Oates v. Taylor*,

20  31 Wn.2d 898, 902-03 (1948). Here, it is for the fact-finder to determine whether Ability had the

21  intent to deceive Plaintiff in not promptly disclosing to the designee the conditions for

22  reinstatement. Neither part is entitled to summary judgment on the cause of action for

23

24

constructive fraud. In light of the court's other rulings herein, the claim of constructive fraud may be moot.

## ATTORNEY FEES AND COSTS

Plaintiff requests attorney fees and costs pursuant to RCW 48.30.015 and *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37 (1991). Under the Insurance Fair Conduct Act "[a]ny first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs, as set forth in subsection (3) of this section." RCW 48.30.015(1). Under *Olympic Steamship*, an award of fees to the insured is "required in any legal action where the insurer compels the insured to assume the burden of legal action" to obtain the full benefit of the insured's insurance contract. *Olympic Steamship*, 117 Wn.2d at 53. *Olympic Steamship* stands for the proposition that when insureds are forced to file suit to obtain the benefit of their insurance contract, they are entitled to attorney's fees. *Butzberger v. Foster*, 151 Wn.2d 396, 414 (2004).

Plaintiff is entitled to attorney fees and costs.

## CONCLUSION

Therefore, it is hereby **ORDERED**:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. 13) is **GRANTED IN PART** and **DENIED IN PART**:

   a. Plaintiff is **GRANTED** summary judgment the causes of action for (1) **Breach of Contract**, (2) **Insurance Bad Faith**, (3) **Violation of Consumer**

1      **Protection Act,** (4) **Violation of Insurance Fair Conduct Act**, and (5)

2      entitlement to an **Award of Attorney Fees and Costs.**

3      **b.** Plaintiff is **DENIED** summary judgment on causes of action for (1) **Negligent**

4      **and Intentional Infliction of Emotional Distress** and (2) **Constructive**

5      **Fraud**.

6      2. Defendant's Cross-Motion for Summary Judgment (Dkt. 30) is **GRANTED IN**

7      **PART** and **DENIED IN PART**.

8      a. Defendant is **GRANTED** summary judgment on Plaintiff's cause of action for

9      **Negligent and Intentional Infliction of Emotional Distress.** This cause of

10      action is **DISMISSED.**

11      b. As to all remaining claims, Defendant's motion for summary judgment is

12      **DENIED.**

13 In light of this Order, the parties shall confer and file with the Court, no later than June

14 15, 2012, a revised joint status report detailing the nature of the remaining claims, if any,

15 and issues for trial, if any.

16 Dated this 1st day of June, 2012.

17

18 _Robert J Bryan_ (signature)

19 ROBERT J. BRYAN
     United States District Judge

20

21

22

23

24 ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND GRANTING IN
PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 23